UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARGARET WENDT FOUNDATION HOLDINGS, INC.,

                      Plaintiff,

              -vs-                            01-CV-74C(SR)

ROYCROFT ASSOCIATES,
THE ROYCROFT SHOPS, INC.,
EDYTHE S. "KITTY" TURGEON, and
ROBERT RUST,

                      Defendants.
_____

APPEARANCES:   HISCOCK & BARCLAY, LLP (TIMOTHY J. WALKER, ESQ.), Buffalo, New York for Plaintiff.

                      PATTERSON BELKNAP WEBB & TYLER LLP (Kenneth J. King, Esq.), New York, New York for Defendants.

## BACKGROUND

More than a century ago, Elbert Hubbard left his position with the Buffalo-based J.D. Larkin Soap Company and entered the publishing business in East Aurora, New York. He established the Roycroft Campus and invited a number of artisans, skilled in a variety of disciplines, to practice their crafts there. The community was modeled loosely upon the medieval-style guild organization of William Morris and the Arts & Crafts Movement in England. As the Roycroft Movement grew, so did the Campus, eventually encompassing numerous buildings that housed the Roycrofters and their shops and studios. The centerpiece of the campus was the Roycroft Inn, built between 1903 and 1905, which accommodated lecturers, guests, and members of the public who traveled to East Aurora to participate in the Roycroft Arts & Crafts Movement.

Following Hubbard's death aboard the *Lusitania* in 1915, the Roycroft Enterprises were run by his son, Elbert Hubbard II.  In 1938, the Campus filed for bankruptcy. Subsequently, a number of individuals and organizations have operated the Inn and other buildings of the Campus.

At issue in this action is the use of the Roycroft Marks, including the Roycroft Orb (a double-barred cross and circle containing the letter "R"), adopted as a trademark by the Roycrofters to identify their handcrafted, high-quality arts and crafts products, and certain patterns used on china and glassware.  On February 2, 2001, the Margaret L. Wendt Foundation Holdings, Inc. filed suit against Roycroft Associates, The Roycroft Shops, Inc., Edythe S. "Kitty" Turgeon, and Robert Rust, asserting that the defendants have "wrongfully asserted exclusive dominion, control, and ownership of the Roycroft Marks as they relate to contemporary products–products manufactured or produced after 1938."  Item 1, ¶ 70, Item 73, ¶ 70.  In an amended complaint filed September 2, 2004, the plaintiff asserts claims for common law trademark infringement, trademark dilution, false designation of origin under the Lanham Act, 15 U.S.C. § 1501, *et seq.*, unfair competition, and related causes of action under the laws of New York State.[1]  In their Answer to the Amended Complaint, defendants have asserted counterclaims pursuant to federal and state trademark law and state common law claims (Item 79).  Defendants allege that they are the rightful owners of the Roycroft Marks, and seek injunctive and monetary relief for plaintiff's wrongful sales of goods bearing the Marks.

---

[1] Defendants previously moved to dismiss certain causes of action, and the court granted the motion in part and denied in part in an order filed November 15, 2001 (Item 38) .

In this motion for partial summary judgment filed June 3, 2005, plaintiff seeks a determination that it is the rightful owner of the Roycroft Marks (Item 90).  Defendants have also cross-moved for summary judgment dismissing the action in its entirety on the grounds of laches (Item 101).  Oral argument on the motions was heard on December 21, 2005.  Defendants objected to plaintiff's Statement of Undisputed Facts on the grounds that it did not comport with Local Rule 56.1, contained statements that were immaterial to the motion, unsubstantiated argument and legal conclusions, and lacked proper citation to the record.  Following unsuccessful settlement negotiations, the court ordered plaintiff to submit a revised statement of undisputed facts (Item 130).  Plaintiff filed its Revised Statement with exhibits on December 31, 2006 (Item 131).  Defendants filed a Response on December 28, 2006 (Item 155) and a Reply on January 17, 2007 (Item 157).[2]  For the reasons that follow, the plaintiff's motion is denied, and the defendants' cross motion is denied.

## FACTS[3]

Use of the Roycroft Orb as a trademark by the original Roycroft craftsmen is undisputed.  The Mark was affixed to handcrafted furniture, leather goods, and other

---

[2]  The court is mindful that defendants have asked that certain portions of plaintiff's factual submissions be stricken.  In its Revised Statement of Undisputed Facts, plaintiff belatedly responded to Defendant's Statement of Undisputed Facts in support of its cross motion for summary judgment.  The court deems it best to reach the merits of the dispute and has endeavored to ascertain which of the asserted facts are truly undisputed by examining all facts, regardless of the form of their submission.

[3]  This factual statement is taken from the defendants' Statement of Undisputed Facts (Item 101), plaintiff's Revised Statement of Undisputed Facts (Item 131), defendants' Response (Item 155) and Reply (Item 157) to Plaintiff's Revised Statement of Undisputed Facts, and the exhibits in support of and in opposition to the cross-motions for summary judgment (Items 105-08 with attachments; Items 132- 51with attachments).

products.   In 1907, the Orb trademark was registered by Elbert Hubbard for use in "furniture and upholstery."  The Roycroft Inn opened to guests in approximately 1903.  It was furnished with handcrafted Roycroft furniture, and the Roycroft Orb design was prominently displayed in the decor, on furniture, china, and other dinnerware at the Inn, and in the advertising of the Inn and its services.  The Orb trademark came to signify the Roycroft Movement and designated those goods to which it was affixed as authentic, high-quality, handcrafted Roycroft pieces.

Use of the Orb following the bankruptcy of 1938 is less apparent.  The Roycroft Movement ceased to exist, while the buildings of the Roycroft Campus were sold, and the businesses therein were acquired and operated by various owners.  Following the bankruptcy in 1938, the Roycroft Inn was, for the most part, continuously operated as an inn and restaurant by a succession of owners.  The Roycroft Copper Shop, located across the street from the Inn, was sold to an East Aurora businessman named Samuel Guard (Item 105, Att. 4-5, pp. 13-14, 18).  Guard himself filed for bankruptcy in 1940, and the Copper Shop passed through a succession of owners, each of whom operated the Copper Shop as a gift shop and sold items bearing the Roycroft Orb (Item 105, Att. 9, pp. 57-59; 10, pp. 98-100).

In 1974, Frank A. Turgeon and Ralph A. Turgeon purchased the real property known as The Roycroft Inn and the related assets.  Title to the property vested in Edythe S. "Kitty" Turgeon, Frank's wife, and June Turgeon, Ralph's wife.  Frank Turgeon established a separate corporation to operate the Inn and the related restaurant.  In 1976, Kitty Turgeon acquired the property and the gift shop business of the Roycroft Copper Shop, including the furniture, fixtures, and merchandise (Item 105, Att. 10). Defendants Turgeon

4

and Rust operated The Roycroft Shops, Inc. from the Copper Shop property, selling a variety of products including original Roycroft antiques, clothing, jewelry, books, glassware, lighting fixtures, china, and rugs.  Beginning in 1982, defendants began to produce, market, and sell Roycroft china (Item 101, ¶ 9).

In 1979, Frank and Kitty Turgeon separated.   Kitty Turgeon formed a new corporation with defendant Rust to purchase the assets of Frank Turgeon's operating corporation and to assume the operating lease of the Inn.  This entity, known as "The Roycroft Inn of East Aurora, Erie County, New York Ltd." ("Roycroft Ltd."), operated the Inn and restaurant from September 1982 until May 1987.  Both Kitty Turgeon and Roycroft Ltd. filed for bankruptcy protection on April 3, 1984.   The Roycroft Ltd. bankruptcy was converted from Chapter 11 to Chapter 7, and a Chapter 7 trustee was appointed on August 7, 1987.

In 1987, the Landmark Society of Western New York ("Landmark Society"), with the financial assistance of the Wendt Foundation, purchased the Inn and the related assets. Rider No. 1 to the Contract of Sale between the Landmark Society and Kitty and June Turgeon provides that nothing in the contract would prevent the sellers from utilizing the names "Roycroft, Elbert Hubbard, Roycroft Campus, etc., but Sellers shall not have the right to use the name Roycroft Inn in any context . . . ." (Item 107, Att. 5).  In a separate document, the sellers agreed to cease use of the business name "Roycroft Inn" in any of its business activity and assigned the right to use the name "Roycroft Inn" to the Landmark Society (Item 107, Att. 6).   At that time, the Roycroft Inn closed for renovation and restoration.

Between 1988 and 1990, Roycroft Shops was issued New York State trademark registrations for the Roycroft Marks for use in tableware, furniture, clothing, jewelry, and printed material.  Additional New York State trademark registrations were issued in 1998 (Item 108, Att. 5).  In 1988, defendants entered into a licensing agreement with Buffalo China to manufacture china based on original Roycroft designs and bearing the Roycroft Orb.  This agreement prevents Buffalo China from selling the Roycroft China to any party without the express permission of the defendants.  In 1994, defendants entered into a similar licensing agreement with the Stickley Furniture Company to manufacture reproductions of Roycroft furniture.  Defendants have marketed and sold furniture and other products in this area and throughout the United States that bear one or more of the Roycroft Marks, with the claim that they are sole owners of the Marks (Item 131, ¶¶ 51, 52, 54-56).

On June 9, 1995, the Wendt Foundation Holdings  took title to the Inn and related assets, which preceded the grand re-opening of the Inn the next day.  The Roycroft Inn advertises using the Roycroft Orb trademark, and the Orb is featured in the Inn's signage, stationary, menus, dinnerware, and decor.  The Roycroft Orb is prominently carved into one of the main interior doors near the front desk.  Additionally, the Inn sells a number of items that feature the Orb, including coffee mugs, shirts, wine glasses, and china (Item 131, ¶¶ 41-45).

On April 28, 2005, defendant Turgeon sold the Copper Shop property to the Roycroft Campus Corporation, a not-for-profit organization not involved in this lawsuit (Item 131, Exh. 68).

Plaintiff charges that the defendants (a) have continued "to attempt to license the use of the Roycroft Marks to others, who by their acts also infringe upon the Roycroft Marks"; (b) have "wrongfully asserted exclusive dominion, control, and ownership of the Roycroft Marks as they relate to contemporary products" (produced after 1938); (c) have "pirated the Roycroft Marks and have profited based upon the goodwill built up by the Wendt Foundation and Wendt Foundation Holdings after they saved the Roycroft Inn and the Roycroft Assets from destruction . . ." ; and (d) have "traded off the goodwill built up by Elbert Hubbard and The Roycrofters, and in so doing, have diluted the value of the famous Roycroft Marks."  Item 73, ¶¶ 69-72.

## DISCUSSION

**1.  Summary Judgment Standard**

The standards for summary judgment are well settled.  Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006).  The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005).  The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'"  *Amnesty Am. v. Town of West Hartford*, 361 F.3d

113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996));
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is
unwarranted if "the evidence is such that a reasonable jury could return a verdict for the
nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than
simply show that there is some metaphysical doubt as to the material facts . . . . [T]he
nonmoving party must come forward with specific facts showing that there is a *genuine
issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "If the
evidence is merely colorable, or is not significantly probative, summary judgment may be
granted." *Anderson v. Liberty Lobby,* 477 U.S. at 249-50 (internal citations omitted).
Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will
not defeat a properly supported motion for summary judgment. *Id.* at 247. Thus, the
nonmoving party may not rest upon mere conclusory allegations or denials, but must set
forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn &
Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it
is insufficient for a party opposing summary judgment "merely to assert a conclusion
without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R.
Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## 2.  Plaintiff's Claim of Ownership of the Roycroft Marks

Plaintiff argues that exclusive ownership of the Roycroft Marks passed to it with its
purchase of the Roycroft Inn in 1995 from the Landmark Society. They assert that the

Roycroft Inn is the "most pertinent" building of the Roycroft Campus and epitomizes the craftsmanship and quality of the goods of the Roycroft Movement.  Thus, as owner of the Inn, plaintiff claims exclusive ownership of the Marks for all purposes, including the sale of china, dinnerware, and other giftware bearing the Roycroft Orb.  Plaintiff argues that "the Roycroft Inn is the only legitimate successor to the Roycroft legacy and has the unqualified right to continue to use the only name and marks that have ever identified it."  (Item 90, Att. 3, p. 5).  Plaintiff also argues that defendants' use of the Roycroft Marks is an "ill-conceived attempt to appropriate history for personal gain."  (Item 118, p. 7).

Defendants dispute plaintiff's assertion of exclusive control of the Roycroft Marks and state that there is an issue of fact regarding ownership of the Marks, precluding partial summary judgment for plaintiff.  Defendants state that Kitty Turgeon acquired the real property of the Roycroft Copper Shop in 1976, including merchandise for sale, fixtures, and furniture.  Prior to her ownership of the Copper Shop, defendants assert that former Roycroft artisans crafted merchandise bearing the Orb for sale in the Copper Shop until the last Roycrofter passed away in the 1980s.   From the former Copper Shop, Turgeon operated the Roycroft Shops, selling merchandise that bore the Roycroft Marks.  Defendants assert that at that time, there were no other parties using the Roycroft Marks in connection with goods for sale.

In 1984, when the Inn filed for bankruptcy, the defendants continued to operate the shop.  At that time, defendants began to market a reproduction of a Roycroft china pattern with a new "Roycroft Renaissance" mark–the so-called "double-R orb."  The shop also sold original Roycroft antiques, goods made by contemporary Roycroft artisans bearing the original Roycroft Orb, reproductions of Roycroft merchandise bearing the Roycroft Marks,

and other merchandise in the Arts and Crafts style.  Additionally, between 1988 and 1990, Roycroft Shops was issued New York State trademark registrations for the Roycroft Marks for use in tableware, furniture, clothing, jewelry, and printed material (Item 108, Att. 5).

When the Landmark Society acquired the Inn in 1987, a rider to the sales contract assigned ownership of the name "Roycroft Inn" to the Landmark Society.  There is nothing in the sales contract or attached riders that would indicate that the parties intended to transfer ownership of all Roycroft Marks to the Landmark Society in 1987.  *See* Defendants' Exhibits 22, 25, 26 (Item 107, Att. 2, 5, 6).

Additionally, the record suggests that the Landmark Society did not believe it had exclusive ownership rights to the Roycroft Marks.  In a legal memorandum, counsel to the Landmark Society advised the Society that it "does not appear to have any right or interest in the name 'Roycroft' when it is unassociated with the Inn.  The Landmark Society does not have any right or interest in the 'double R' symbol."  (Item 107, Att. 8, p. 2.)  Counsel also opined that the Landmark Society "most likely" has the right to use the "single R" mark (the Roycroft Orb) to represent the Inn and "may also have the right to use the 'single R' for a limited number of other purposes. . . . [T]he Inn's right to use the 'single R' only extends to products logically connected to its current status a hotel and restaurant. "  (Item 107, Att. 8, pp. 2, 4.)  Additionally, in a letter dated December 16, 1991, Henry McCartney, Executive Director of the Landmark Society, advised the defendants that "[i]n dealing with this trademark issue, . . . neither the Landmark Society nor the Roycroft Revitalization Corporation had any desire to impinge on your business activity."  (Item 107, att. 7.)  However, McCartney stated that the Inn "should proudly display the name 'Roycroft Inn' and utilize the Roycroft orb."  *Id.*  If the Landmark Society did not have exclusive ownership

of the Roycroft Marks, it could not convey such exclusive ownership of the marks to plaintiff.

This is an unusual case, as the marks at issue were used over time for many different businesses and products.  Historically, each craft shop on the Roycroft Campus manufactured goods for sale bearing the Orb trademark and sold them in that shop and by mail order.  Additionally, the Roycroft Inn provided food and lodging under the banner of the Roycroft Orb, as the mark came to symbolize the entire Movement as well as the individual crafts.  Plaintiff seeks to assert exclusive ownership of all the Roycroft Marks for all products by virtue of its ownership of a single building on the Campus.  This position is simply not supported by case law.

Plaintiff cites *Plitt Theatres, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 697 F. Supp. 1031 (N.D.Ill. 1988), for the proposition that "[o]wnership of trademarks and service marks passes impliedly with ownership of the pertinent building or business with which the mark is associated, absent express provision to the contrary."  *Plitt Theatres, Inc.*, 697 F. Supp. at 1034-35; *see also* 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 19.43 at 19-191 (4th ed. 1983); 1 J. McCarthy, Trademarks and Unfair Competition, § 18.12 at 825 (2d ed. 1984).  In *Plitt,* the purchaser of the Esquire Theatre acquired the right to use the trademark "Esquire Theatre" in the operation of a new theatre to be built on the property, while the former lessee of the Esquire Theatre could not operate a new "Esquire Theatre" a few blocks away.  The trademark "Esquire Theatre" passed with the title to the property.   Here, unlike the Esquire Theatre in *Plitt* which was the sole business property at issue,  the Roycroft Inn is just one of many buildings of the Roycroft Campus.  The Roycroft Marks were used cooperatively in the business of the Inn

and the businesses of the various Roycroft Shops.  While an important building, even described as the "jewel in the crown" of the Roycroft Campus, the Inn was not a shop, and it has not been shown that furniture or other Roycroft goods were ever sold from the Inn prior to plaintiff's acquisition of the Inn.

"A sale of a business and of its good will carries with it the sale of the trade-mark used in connection with the business, although not expressly mentioned in the instrument of sale."  *President Suspender Co. v. Macwilliam*, 238 F. 159, 162 (2d Cir. 1916).  The Roycroft Marks, to the extent that they were used in the business of the Inn, were passed with the sale of the Inn from owner to owner.  However, the business of the Inn was food, drink, lodging, and, perhaps, entertainment.  The various craft shops of the Roycroft Campus used the Orb trademark to identify their goods for sale, and Roycroft goods continued to be sold from the property of the Copper Shop.  While the Marks have been associated with the business of the Inn (in dishware, decor, and advertising) and have been passed from owner to owner, it does not follow that the succession of owners of the Inn acquired exclusive ownership of the Marks as an identifier of furniture and other goods for sale.  Accordingly, the court finds that plaintiff has not established exclusive ownership of the Roycroft Marks as a matter of law.

Additionally, in an effort to anticipate defendants' assertion of ownership of the Roycroft Marks based on abandonment, plaintiff argues that it did not abandon the Marks during the period of renovation from 1987 until the Inn reopened in 1995.  To establish the defense of abandonment by failure to police a trademark, "it is necessary to show either the owner's intent to abandon the mark, or a course of conduct on the part of the owner causing the mark to become generic or lose its significance as a mark."  *Hermes Int'l v.*

12

*Lederer de Paris Fifth Avenue, Inc.*, 219 F.3d 104, 110 (2d Cir. 2000). A defendant bears a "high burden of proof" to show abandonment through failure to police. *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir. 1983). Here, despite the fact that it was closed for renovations for a period of eight years, the Roycroft Inn continued to be associated with the Roycroft Movement, the Campus, and the Marks. It was clearly the intention of the Landmark Society and Wendt to rehabilitate the Roycroft Inn in an effort to preserve the legacy of Elbert Hubbard and the Roycroft Movement. To the extent that they had ownership of any or all of the Marks, neither the Landmark Society nor the Wendt Foundation evinced any intent to abandon the Marks.

Finally, plaintiff argues that defendants could not have adopted the Roycroft Marks in 1976 when defendant Turgeon acquired the Copper Shop as the Marks had attained a level of fame and a continuing association with the Movement, the Inn, and the authentic Arts & Crafts goods produced by the Roycrofters. This argument is premature, as defendants have not cross-moved for judgment on the grounds of its ownership of the Marks and do not, at this point, seek a declaration that they are the exclusive owners of the Roycroft Marks. All the court has been asked to determine on plaintiff's motion is whether plaintiff has established its exclusive ownership of the Roycroft Marks. It has failed to establish ownership of the Marks as a matter of law, and accordingly, the motion for summary judgment is denied.

### 3. Defendant's Cross Motion

Defendants argue that plaintiff's entire complaint should be dismissed on the grounds of laches. The Second Circuit has long recognized the defense of laches when

a party alleges violations of the Lanham Act. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996) (affirming dismissal of trademark infringement on laches grounds). Laches is a "fundamental threshold matter" that must be resolved before reaching the merits of the plaintiff's trademark claims. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 216 (2d Cir.2003). The three essential elements of a laches defense are: 1) the plaintiff's knowledge that the defendant was using its mark, 2) the plaintiff's inexcusable delay in taking action, and 3) prejudice to the defendant if the action is continued. 2 J. McCarthy, Trademarks and Unfair Competition § 31:1 (2d ed. 1984).

Because the Lanham Act establishes no limitations period for claims alleging unfair competition or false advertising, and because there is no corresponding federal statute of limitations, courts look to the most analogous state statute of limitations for laches purposes. *Conopco,* 95 F.3d at 191. For trademark infringement under the Lanham Act, the court applies New York's six-year fraud statute of limitations. *Id.* When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to justify the application of the doctrine of laches. On the other hand, when suit is brought after the statutory time has elapsed, the burden is on the plaintiff to prove the circumstances making it inequitable to apply laches to the case. *Id.* (citing *Leonick v. Jones & Laughlin Steel Corp.*, 258 F.2d 48, 50 (2d Cir. 1958)).

Here, defendants argue that plaintiff had actual and constructive knowledge of defendants' use of the Roycroft Marks from at least 1987 and did not bring suit until 2001. Additionally, defendants contend that plaintiff was aligned in interest with the Landmark Society and so must accept the consequences of the Landmark's Society's failure to take action against defendants prior to the transfer of the Inn to plaintiff in 1995. Accordingly,

14

defendants argue that the burden is on plaintiff to overcome the presumption of laches. For purposes of the motion, the court will assume that plaintiff had knowledge of defendants' use of the Marks when the Landmark Society acquired the Inn with plaintiff's financial assistance in 1987.

The presumption of laches places on plaintiff at least a burden of production. *Harley-Davidson, Inc. v. O'Connell*, 13 F.Supp.2d 271, 281 (N.D.N.Y. 1998).  To defeat defendants' motion for summary judgment, plaintiff must provide sufficient evidence to raise a genuine issue respecting either the reasonableness of the delay or the existence of prejudice.  *Id.* (citing *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1038 (Fed. Cir. 1992)).

Plaintiff argues that the laches defense is inapplicable because defendants suffered no material prejudice by any delay in instituting this action.  Defendants continued to operate the Roycroft Shops, selling goods bearing the Roycroft Orb, continued to research and lecture on the Roycroft Movement, and continued to profit from their licensing agreements with Buffalo China and Stickley Furniture.  Plaintiff also disputes that it is guilty of inexcusable delay.  While the Landmark Society purchased the Inn in 1987 (with the financial support of Wendt), Wendt did not take title to the Inn until 1995.  Thereafter, in November 1995, plaintiff filed opposition to defendant's attempt to register the Roycroft Marks with the United States Patent and Trademark Office (Item 107, Att. 4.) Proceedings before the Patent and Trademark Office have been stayed pending the outcome of this litigation.

The parties' attempt to come to a settlement of the issues regarding ownership of the Roycroft Marks provides plaintiff with a reasonable excuse for its delay in bringing suit.

15

In order to constitute a reasonable excuse, negotiations "must ordinarily be continuous and bilaterally progressing, with a fair [chance] of success . . . ." *MGA, Inc. v. Centri-Spray Corp.*, 639 F. Supp. 1238, 1243 (E.D.Mich.1986) (quoted in *Harley-Davidson, Inc. v. O'Connell,* 13 F. Supp. 2d at 280).  Here, the record is replete with correspondence alluding to the dispute as to the ownership of the Marks and the parties' unsuccessful efforts to negotiate a solution prior to the filing of this lawsuit (Item 107, Att. 1, 3, 7; Item 133, Exh. 31).  In 1990, defendant Turgeon wrote to the Chairman of the Roycroft Revitalization Corporation detailing the basis of defendants' claim to ownership of the Roycroft Marks and offering the Landmark Society "a non-royalty, non-exclusive license for a period of two years beginning August 1, 1990" for the Roycroft name and the Roycroft Orb (Item 133, Exh. 31).   In 1991, Henry McCartney, the Executive Director of the Landmark Society advised defendants that, while they had no "desire to impinge on your business activity," legal counsel had advised that the Landmark Society had the right to use the Orb trademark "in connection with products associated with Inn business . . . ." (Item 107, Att. 7).  Further, Mr. McCartney hoped that defendants would discuss their planned uses of the Orb so that all parties could "reap the benefits of a revitalized Inn." *Id.*  In 1994, as the reopening of the Inn grew closer, it is apparent that the parties had not resolved the issues regarding ownership of the Marks (Item 107, Att. 1).  In March 1995, defendants advised the trustees of the Wendt Foundation of possible solutions for a mutual agreement, including placing the Roycroft name and Mark in a not-for-profit entity and arbitration. Wendt Trustee Thomas Lunt testified that the parties met on two occasions to "see if there was a way of jointly marketing products with this mark . . . ." (Item 105, Att. 2, p. 95). These negotiations proved unsuccessful (*id.* at p. 96).

16

The defense of laches is committed to the sound discretion of the trial court, and the determination is not made upon the application of "mechanical rules." *Aukerman*, 960 F.2d at 1032 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392 (1946)). "A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties." *Aukerman*, 960 F.2d at 1032.

This is a very unusual case. Two entities arguably have a right to use the Roycroft name and Marks to some degree, as has been the case since the beginning of the Roycroft Movement. Genuine efforts have been made over the years to resolve issues relating to ownership of the Marks to the mutual benefit of all parties. Under these circumstances, the court finds that plaintiff has provided sufficient evidence to raise a genuine issue with respect to the reasonableness of the delay in bringing suit. Accordingly, the cross motion for summary judgment is denied. This ruling should not be understood to preclude defendants from offering the defense of laches at trial.

## CONCLUSION

Plaintiff's motion for partial summary judgment (Item 90) is denied, and defendants' cross motion for summary judgment (Item 101) is also denied. The parties shall meet with the court on Wednesday, November 15, 2007, at 9:45 a.m. to set a further schedule. Out-of-town counsel may participate by telephone if desired.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: October   11   , 2007
p:\opinions\2001\01-74.sept2607

17